UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **GREENUP INDUSTRIES LLC** | * | **CIVIL ACTION** |
| | * | |
| | * | **NO. 22-2203** |
| **VERSUS** | * | |
| | * | **SECTION: "L" (4)** |
| **FIVE S GROUP, LLC ET AL** | * | |
| | * | |

## ORDER AND REASONS

Before the Court is Defendants and Counterclaim Plaintiffs' Five S Group, LLC and Hartford Fire Insurance Company's Motion for Partial Summary Judgment. R. Doc. 53. Plaintiff and Counterclaim Defendant Greenup Industries, LLC filed a motion in opposition. R. Doc. 63. Defendants and Counterclaim Plaintiffs filed a reply memorandum. R. Doc. 69. Having considered the briefing, relevant law, and oral argument, the Court rules as follows.

I.  BACKGROUND

This case arises from a contract between Greenup Industries, LLC ("Greenup") the Contractor, and Five S Group, LLC ("Five S"), the Subcontractor, to excavate fill from the Bonnet Carre Spillway and transport it to another site, in fulfillment of a contract Greenup was awarded by the United States Army Corps of Engineers ("USACE") to complete work related to its Hurricane Storm Damage Risk Reduction Project.

Greenup alleges that it entered a subcontract ("Subcontract") with Five S on October 26, 2020, in which Five S agreed to provide labor and equipment to excavate 1,000,000 cubic yards ("CY") of fill from the Bonnet Carre Spillway, and that Hartford Fire Insurance Company ("Hartford") then issued a performance bond on behalf of Five S in the amount of $9,472,000.00. *Id.* at 2. Both parties note that the Subcontract schedule called for the fill to be excavated over 15 months, requiring that Five S excavate and transport an average of 66,667 CY of fill each month.

1

*Id.* at 3; R. Doc. 29 at 2. The Subcontract provided that the fill was to be excavated from a "borrow pit," and moved to a stockpile. R. Doc. 18-1 at 19.

Greenup alleges that USACE began raising issues about Five S's lack of performance in "late 2021." R. Doc. 1-1 at 3. Among the concerns, Greenup alleges, were broken equipment left onsite, excessive employee turnover, and a lack of processing equipment that resulted in failed quality tests regarding the moisture content of the fill. *Id.* at 4. Five S, by contrast, alleges that, while it "mobilized sufficient equipment and labor" to finish the project on schedule, Greenup's breach of performance caused its inability to meet the Project timeline. R. Doc. 18 at 4. On November 21, 2021, Five S's area manager, Justin Mibbs, sent Greenup a letter alleging that, despite an initial agreement that Greenup would provide Five S 40-50 trucks a day to transport the fill from the borrow site to the stockpile, "Greenup so far has been providing only about 8 or 9 trucks a day." R. Doc. 18-3 at 1. In the letter, Mibbs alleged that the small number of trucks provided would delay the project's completion by four years, and informed Greenup that it was "submitting an application for payment of 85% of our daily cost of keeping equipment and labor at the borrow pit" until "Greenup increases its number of trucks at the site." *Id.* at 2. Greenup's counsel replied to the letter on November 15, 2021, stating that Greenup viewed the request for daily costs as "outside of the terms of the Subcontract" because "5S agreed to be paid pursuant to the line items set forth in Exhibit B" and that these line items "must be based upon USACE approved calculations of in-place quantities." R. Doc. 18-4 at 1.

Over the next five months, the problems regarding the pace of the work did not abate. Monthly schedule updates issued by Greenup from December 2021 to April 2022 all note delays due to inadequate number of trucks and difficulties "keeping trucks onsite and available." R. Doc. 29-1 at 2-5. Greenup alleges that, on April 12, 2022, Five S sent a demand letter re-emphasizing

its November 1, 2021 request and notifying Greenup that it had de-mobilized from the site and would not resume until Greenup agreed to pay for past and future standby time. R. Doc. 1-1 at 4. Greenup further alleges that Five S demobilized from the site "well before March 15, 2022" and that Five S "made clear its intent to abandon the job well before any 'declaration' of alleged default." *Id.* at 5. Five S alleges that it was "excused from further performance under the Subcontract" when Greenup breached its obligations to supply sufficient trucks and to pay Five S for the services it provided under contract. R. Doc. 29 at 5.

On May 27, 2022, Greenup sued Five S and its insurer, Hartford, in Orleans Parish Civil District Court, seeking a declaratory judgment that Five S "does not have a legal or contractual basis to put Greenup in default and to discontinue its obligations under the Subcontract" and that any payment to Five S was conditioned upon Greenup's receipt of USACE funds. R. Doc. 1-1 at 7. Greenup also made claims for breach of contract and indemnity against Five S and repeated its claims for declaratory judgment against Hartford, *id.* at 7-8, and sought attorneys fees from Hartford. *Id.* at 9. On July 15, 2022, Five S and Hartford removed the case to federal court under 28 U.S.C. § 1442(a)(1), asserting that removal was proper because Five S acted at the direction of the USACE, and because Greenup's claims rested on the Miller Act, at 40 U.S.C. § 3133(b)(3), which is under exclusive federal jurisdiction. R. Doc. 1 at 6.

On July 22, 2022, Five S and Hartford filed a counterclaim against Greenup and its insurer, which Defendants named as "ABC Insurance Company." R. Doc. 18 at 9. On September 20, 2022, Five S and Hartford filed an amended counterclaim against Greenup and its actual insurer, Markel Insurance Company. *Id.* Against Greenup, Five S and Hartford allege breach of contract. Against both Greenup and Markel, Five S and Hartford allege claims under the Miller Act for Greenup's failure to pay Five S out of the Payment Bond that Markel issued for the work. Five S and Hartford

3

also bring claims against Greenup and Markel under the Louisiana Prompt Payment Act, alleging that Greenup failed to remit payment within 14 days of receiving those funds from the USACE. *Id.* at 11-12.

## II.     PRESENT MOTION

On October 10, 2023, Defendants Five S and Hartford filed the instant Motion for Partial Summary Judgment. R. Doc. 53. The gist of Movants' argument is that they are entitled to standby and/or delay damages pursuant to the Miller Act, or alternatively, state law. *Id.* First, Defendants argue that as subcontractors, they are entitled to delay expenses under the Miller Act because of Plaintiff's failure to supply enough trucks to the Defendants to complete the project. R. Doc. 53-1 at 4-5. Defendants also argue language in subcontracts waiving delay damages are unenforceable under the Miller Act. *Id.* at 6-7. In furthering this argument, Defendants cite only persuasive law. *Id.* at 4-7. Second, Defendants argue that delay damages are recoverable in subcontracts pursuant to La. R.S. § 38:2216(H). *Id.* at 8.

In opposition, Greenup alleges that the clear and unambiguous terms of the Subcontract do not provide Greenup with an obligation to pay for "standby time" and that the schedule in the Prime Contract governed the timeline of this project. R. Doc. 63. Further, Greenup argues, the language of the Subcontract obligated Five S to wait until USACE accepted "in-place quantities" to be paid. *Id.* at 10. Greenup essentially contends that, because there is no language in the Subcontract about Greenup providing trucks or paying for "standby time," the language in the Bid Proposal that suggests that Greenup has an obligation to do so is in conflict with the Subcontract. *Id.* at 9-12. As a result, Greenup argues, the language of the Bid Proposal is knocked out by the Subcontract. Greenup additionally argues that Five S' reliance on the Miller Act is misplaced because the Subcontract does not contain any clause on damages for standby or delay. *Id.* at 13-

14. Lastly, Greenup argues that Five S fails to provide sufficient facts to allege that it is entitled to delay damages under Louisiana state law. *Id.* at 14.

In response, Five S argues that pursuant to the Subcontract and Prime Contract, it was Greenup's duty to provide trucking services to Five S for completion of the project. R. Doc. 69 at 1-5. Further, Five S argues that the Subcontract required Five S to load clay into the trucks and that the declarations provided by Greenup are "self-defeating, irrelevant" and contradictory to the Subcontract's terms. *Id.* at 5-7. Five S additionally argues that it does not need to prove delay for this motion to be granted. *Id.* at 10. Lastly, Five S reiterates its earlier arguments that its claim is consistent with the Miller Act and that Greenup failed to provide enough trucks to complete the project on time. *Id.* at 1-13.

On November 1, 2023, the Court heard oral argument on the motion. R. Doc. 72.

### III. APPLICABLE LAW

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence in the light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). Initially, the movant bears the burden of presenting the basis for the motion; that is, the absence of a genuine issue as to any material fact or facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to come forward with specific facts showing there is a genuine dispute for trial. *See* Fed. R. Civ. P. 56(c*); Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (citation omitted).

## IV. ANALYSIS

The Court grounds its discussion in the standard for summary judgment, which requires that there be "no genuine dispute as to any material fact" such that "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence in the light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). Following a review of the law, briefings, and oral argument, the Court finds there are factual questions unresolved such that summary judgment is not appropriate at this juncture.

Five S stressed both in its motion and at oral argument that the case at hand is identical to that of *United States ex re. T.M.S. Mech. Contractors, Inc. v. Millers Mut. Fire Ins. Co. of Tex.*, 942 F.2d 946, 952 (5th Cir. 1991) where the Fifth Circuit held that a subcontractor was entitled to delay damages because of the contractor's termination of the subcontract. The Court disagrees.

As a threshold issue, it has yet to be determined who is the breaching party in this matter. Because Five S and Greenup both argue that the opposing party breached the Subcontract, this issue is best resolved by a jury. R. Doc. 53; R. Doc. 63. Only after the jury decides which party was in breach can it be taxed with the duty of determining if Five S is entitled to delay damages. Accordingly, the Court finds that this motion is premature as underlying factual questions remain unresolved.

## V. JUDGMENT

For the foregoing reasons, Five S Group LLC and Hartford Fire Insurance Company's Motion for Partial Summary Judgment, R. Doc. 53, is **DENIED**.

New Orleans, Louisiana, this 3rd day of November, 2023.

_____
United States District Judge