UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **GREENUP INDUSTRIES LLC** | * | **CIVIL ACTION** |
| | * | |
| | * | **NO. 22-2203** |
| **VERSUS** | * | |
| | * | **SECTION: "L" (4)** |
| **FIVE S GROUP, LLC ET AL** | * | |
| | * | |

## ORDER AND REASONS

Before the Court is a Motion *in limine* by Plaintiff and Counterclaim Defendant Greenup Industries, LLC and Counterclaim Defendant Markel Insurance Company Motion to Strike and/or Exclude the expert testimony and reports of David Lourie, a civil and environmental engineer. R. Doc. 66. Defendant and Counterclaim-Plaintiff Five S Group, LLC opposes this motion. R. Doc. 69. Having reviewed the parties' arguments and applicable law, the Court now rules as follows.

I.  BACKGROUND

This case arises from a contract between Greenup Industries, LLC ("Greenup") the Contractor, and Five S Group, LLC ("Five S"), the Subcontractor, to excavate fill from the Bonnet Carre Spillway and transport it to another site, in fulfillment of a contract Greenup was awarded by the United States Army Corps of Engineers ("USACE") to complete work related to its Hurricane Storm Damage Risk Reduction Project.

Greenup alleges that it entered a subcontract ("Subcontract") with Five S on October 26, 2020, in which Five S agreed to provide labor and equipment to excavate 1,000,000 cubic yards ("CY") of fill from the Bonnet Carre Spillway, and that Hartford Fire Insurance Company ("Hartford") then issued a performance bond on behalf of Five S in the amount of $9,472,000.00. *Id.* at 2. Both parties note that the Subcontract schedule called for the fill to be excavated over 15 months, requiring that Five S excavate and transport an average of 66,667 CY of fill each month.

1

*Id.* at 3; R. Doc. 29 at 2. The Subcontract provided that the fill was to be excavated from a "borrow pit," and moved to a stockpile. R. Doc. 18-1 at 19.

Greenup alleges that USACE began raising issues about Five S's lack of performance in "late 2021." R. Doc. 1-1 at 3. Among the concerns, Greenup alleges, were broken equipment left onsite, excessive employee turnover, and a lack of processing equipment that resulted in failed quality tests regarding the moisture content of the fill. *Id.* at 4. Five S, by contrast, alleges that, while it "mobilized sufficient equipment and labor" to finish the project on schedule, Greenup's breach of performance caused its inability to meet the Project timeline. R. Doc. 18 at 4. On November 21, 2021, Five S's area manager, Justin Mibbs, sent Greenup a letter alleging that, despite an initial agreement that Greenup would provide Five S 40-50 trucks a day to transport the fill from the borrow site to the stockpile, "Greenup so far has been providing only about 8 or 9 trucks a day." R. Doc. 18-3 at 1. In the letter, Mibbs alleged that the small number of trucks provided would delay the project's completion by four years, and informed Greenup that it was "submitting an application for payment of 85% of our daily cost of keeping equipment and labor at the borrow pit" until "Greenup increases its number of trucks at the site." *Id.* at 2. Greenup's counsel replied to the letter on November 15, 2021, stating that Greenup viewed the request for daily costs as "outside of the terms of the Subcontract" because "5S agreed to be paid pursuant to the line items set forth in Exhibit B" and that these line items "must be based upon USACE approved calculations of in-place quantities." R. Doc. 18-4 at 1.

Over the next five months, the problems regarding the pace of the work did not abate. Monthly schedule updates issued by Greenup from December 2021 to April 2022 all note delays due to inadequate number of trucks and difficulties "keeping trucks onsite and available." R. Doc. 29-1 at 2-5. Greenup alleges that, on April 12, 2022, Five S sent a demand letter re-emphasizing

2

its November 1, 2021 request and notifying Greenup that it had de-mobilized from the site and would not resume until Greenup agreed to pay for past and future standby time. R. Doc. 1-1 at 4. Greenup further alleges that Five S demobilized from the site "well before March 15, 2022" and that Five S "made clear its intent to abandon the job well before any 'declaration' of alleged default." *Id.* at 5. Five S alleges that it was "excused from further performance under the Subcontract" when Greenup breached its obligations to supply sufficient trucks and to pay Five S for the services it provided under contract. R. Doc. 29 at 5.

On May 27, 2022, Greenup sued Five S and its insurer, Hartford, in Orleans Parish Civil District Court, seeking a declaratory judgment that Five S "does not have a legal or contractual basis to put Greenup in default and to discontinue its obligations under the Subcontract" and that any payment to Five S was conditioned upon Greenup's receipt of USACE funds. R. Doc. 1-1 at 7. Greenup also made claims for breach of contract and indemnity against Five S and repeated its claims for declaratory judgment against Hartford, *id.* at 7-8, and sought attorneys fees from Hartford, *id.* at 9. On July 15, 2022, Five S and Hartford removed the case to federal court, R. Doc. 1 at 6, under 28 U.S.C. § 1442(a)(1), asserting that removal was proper because Five S acted at the direction of the USACE, and because Greenup's claims rested on the Miller Act, at 40 U.S.C. § 3133(b)(3), which is under exclusive federal jurisdiction. *Id.*

On July 22, 2022, Five S and Hartford filed a counterclaim against Greenup and its insurer, which Defendants named as "ABC Insurance Company." R. Doc. 18 at 9. On September 20, 2022, Five S and Hartford filed an amended counterclaim against Greenup and its actual insurer, Markel Insurance Company ("Markel"). *Id.* Against Greenup, Five S and Hartford allege breach of contract. Against both Greenup and Markel, Five S and Hartford allege claims under the Miller Act for Greenup's failure to pay Five S out of the Payment Bond that Markel issued for the work.

3

Five S and Hartford also bring claims against Greenup and Markel under the Louisiana Prompt Payment Act, alleging that Greenup failed to remit payment within 14 days of receiving those funds from the USACE. *Id.* at 11-12.

## II.   PRESENT MOTION

Greenup and Markel move this Court to strike and/or limit the expert testimony and reports of David Lourie, Five S' proffered civil and environmental engineer. R. Doc. 66. Greenup and Markel argue that Lourie's proposed testimony and reports contain impermissible legal conclusions which infringes upon the role of the jury. R. Doc. 66-1 at 6-8. They argue that two of Lourie's opinions ("Opinion One" and "Opinion Two") that speak to factual questions of contractual interpretation should be struck. *Id.* Lastly, they argue that Lourie's opinion ("Opinion Three") on the moisture in the soils at the project site is not supported by any facts and should therefore be excluded from trial. *Id.* at 8-10.

In opposition, Five S contends that in developing his opinion, Lourie reviewed over 300 documents and has over 40 years of experience as a geotechnical and civil engineering field. R. Doc. 69 at 2. Regarding Greenup and Markel's argument Opinions One and Two address contractual interpretation, Five S argues that this Court has indicated that the terms of the subcontract may be ambiguous which Lourie's testimony can help resolve. *Id.* at 8. Lastly, they argue that Lourie's testimony in Opinion Three on soil moisture was not a legal conclusion, but a statement Lourie made based on the project's specifications. *Id.* at 12.

In reply, Greenup and Markel argue that Lourie cannot address contractual interpretation because his report and testimony do not rely upon customs in the industry. R. Doc 74-2 at 1. Instead, they argue that Lourie opines on contractual responsibilities of the parties without citing to his experience "with the concept of [the] incorporation of a bid proposal." *Id.* at 2. They

4

further stress their earlier arguments and aver that Lourie's testimony and reports cannot speak to the contractual obligations of the parties because that is the role of the jury. *Id.* at 3-4.

### III. APPLICABLE LAW

**Federal Rule of Evidence 702**

Federal Rule of Evidence 702 governs the admissibility of expert witness testimony. The Rule provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Trial courts are gatekeepers of expert testimony and must determine whether proffered expert testimony is reliable and relevant before admitting it into evidence. *See Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 596-97 (1993). An expert's proposed testimony must be relevant "not simply in the way all testimony must be relevant [pursuant to Federal Rule of Evidence 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003).

The Fifth Circuit has stated that:

> "[t]here is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute."

*Vogler v. Blackmore*, 352 F.3d 150, 156 n.5 (5th Cir. 2003) (quoting 1972 Advisory Committee Notes to Rule 702). However, expert testimony should only be excluded on this basis

if a court finds that "the jury could adeptly assess [the] situation using only their common experience and knowledge." *Peters v. Five Star Marine Serv.*, 898 F.2d 448 (5th Cir. 1990).

**Federal Rule of Evidence 704**

Federal Rule of Evidence 704 provides that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Fed. R. Evid. 704. But "this rule does not allow an expert to render conclusions of law." *Snap-Drape, Inc. v. Comm'r*, 98 F.3d 194, 198 (5th Cir. 1996).

### IV.   ANALYSIS

Greenup and Markel move this Court to exclude three legal conclusions asserted by Lourie in his expert report. They seek to exclude Lourie's testimony in Opinion One that the Subcontract incorporates Five S' Bid Proposal and that Five S is entitled to standby time compensation. Second, they take issue with Lourie's statements in Opinion Two that "the primary reason for low productivity and schedule slippage was Greenup's inability to provide the required amount of trucks on a consistent basis." And in Opinion Three, Greenup and Markel argue that Lourie's comments that Five S was not responsible for the soil and clay being too wet are unfounded.

"[A]n expert may never render conclusions of law." *Goodman v. Harrison Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009). At issue in this case is whether the Subcontract incorporated the Bid Proposal. R. Doc. 69 at 7. In his report, Lourie testifies that the Subcontract contains language that incorporates Five S' Bid Proposal into the subcontract. *Id.* at 5-8. "The use of expert testimony is appropriate where, for example a phrase in a contract is ambiguous and a court seeks to determine 'whether there is a received usage in the trade which would shed light on its meaning." *Temple v. McCall*, 720 F.3d 301, 305 (5th Cir. 2013) (quoting *Jefferson*

*Disposal Co. v. Jefferson Parish*, 459 So. 2d 639, 642 (La. Ct. App. 1984)).

Here, the Court finds that Lourie stepped outside his area of expertise to opine on the contractual responsibilities of the parties. The Court notes that Lourie has extensive experience in the civil and environmental engineering fields and with other USACE projects that would qualify Lourie to testify to issues that would help the jury resolve factual questions in those fields. Yet, Five S fails to demonstrate how Lourie's background enables him to help the jury resolve contractual ambiguities. Though such testimony is appropriate when the expert can "shed light" on contractual terms by citing to customs and usage in the industry, that is not the case here. Lourie's report does not explain how industry customs support any of his regarding the contractual responsibilities of the parties, Opinions One and Two. *Temple*, 720 F.3d at 305 (internal citation omitted).

This finding is supported by the court's holding in *Dickson v. Sklarco L.L.C.*, cited by both parties in their briefings. No. 5:11-0352, 2014 WL 4443423, *1 (W.D. La. Sept. 9, 2014). In that case, the district court concluded that it was improper for the defendant's expert, an oil and gas consultant, to offer legal conclusions. *Id.* at 5. They reasoned that because the expert was not licensed to practice Louisiana law, she could not speak to the responsibilities of the parties under the contract. *Id.* Similarly, Lourie is a civil and environmental engineer. R. Doc. 69 at 2. There is no indication that Lourie is licensed to practice law in this state. Accordingly, he is not qualified to offer legal conclusions on contractual responsibilities of Greenup and Five S.

On the other hand, addressing Greenup and Markel's argument on the exclusion of Lourie's opinion on soil moisture, the Court finds that his report is based on sufficient facts and data as he relied upon USACE test results, preconstruction soil boring data, and other project

documents in addition to his experience as an engineer in the industry. Fed. R. Evid. 702.[1]

The fact that the opposing party does not agree with the facts relied upon by the experts or their interpretation of those facts does not render their opinions irrelevant or reliable; if this matter proceeds to trial, opposing counsel may cross-examine the expert, regarding all facts in this matter and the jury may then weigh the expert opinion based on that examination.

It is "the role of the adversarial system, not the court, to highlight weak evidence"— challenges related to the basis of Lourie's opinions are thus best suited for cross-examination, not exclusion under Rule 702. *Delta Towing, LLC v. Justrabo*, 2009 WL 3763868 (E.D. La. 2009) (citing *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 563 (5th Cir. 2004)). While the Court finds that parts of Lourie's report, Opinion Three, pass *Daubert* scrutiny, the parties should be aware that the court will not allow Lourie to testify on any legal conclusions at trial.

V. **CONCLUSION**

Thus, for the reasons set forth above, **IT IS ORDERED** that Greenup Industries, LLC and Markel Insurance Company's Motion to Strike or Limit Expert Testimony, R. Doc. 66, is **GRANTED** in part and **DENIED** in part. He will not be permitted to offer any legal conclusions on the contractual responsibilities of the parties, but he is permitted to testify as to the moisture in the soils.

New Orleans, Louisiana, this 7th day of November, 2023.

_____
United States District Judge

---

[1] The Court notes that an amendment to Fed. R. Evid. 702(d) is to take effect on December 1, 2023. United States Courts, Pending Rules and Forms Amendments (last visited Nov. 7, 2023). Pursuant to the amendment, Fed. R. Evid. 702(d) now requires that "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." The Court finds that Lourie's opinion on soil moisture pass Fed. R. Evid. 702 muster under both the current rule and its future amendment.